UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

NATHANIEL PAULINO, individually, and on behalf of all Others similarly situated,

Plaintiffs,

- against -

Civil Action No.

THE VILLAGE OF FREEPORT, MICHAEL SMITH, individually, JCB & SONS, INC. d/b/a NON-STOP TOWING & RECOVERY a/k/a NON-STOP TOWING a/k/a NON-STOP TOWING AND RECOVERY and JEROME BONOMO, individually,

Defendants.
---------------------------------------------------------------------X

**CLASS ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff Nathaniel Paulino, by his attorneys, brings this Complaint against Defendants the Village of Freeport ("Freeport"), Michael Smith, JCB & Sons, Inc. d/b/a Non-Stop Towing & Recovery a/k/a Non-Stop Towing a/k/a Non-Stop Towing and Recovery ("Non-Stop"), and Jerome Bonomo (Non-Stop and Bonomo collectively referred to herein as the "Towing Defendants"), and alleges as follows:

## I. NATURE OF THIS ACTION

1. The Plaintiff has commenced this action to pursue recourse for the Defendants having seized and permanently deprived him of his 2019 Dodge Charger, in violation of the Plaintiff's rights against unreasonable seizures under the 4th Amendment, and rights to Due Process under the 5th and 14th Amendments.

2. The Village of Freeport has implemented and maintained a *non-judicial self-help* collection scheme under the direction of the Village's Police Chief (Defendant Michael Smith).

3. As the Police Chief, Defendant Smith has directed all Freeport police officers to make warrantless seizures of "Scofflaw" vehicles, which Freeport defines as any vehicle that has three or more outstanding, albeit unadjudicated, parking tickets. *See* Exhibit "A," that being an e-mail from Chief Smith to "All Sworn Personnel" of the Freeport Police Department - which is annexed to, and made part of, this complaint.

4. Chief Smith, or someone acting at his direction, regularly maintains lists of Scofflaw vehicles, which are periodically sent to all Freeport Police officers.

5. Defendant Smith has directed that all Scofflaw vehicles be seized wherever and whenever they are found parked within the Village - - purely as a collection measure - - to force the owners of such vehicles to pay their allegedly unpaid, albeit unadjudicated, parking tickets.

6. He has further instructed all police department employees that once vehicles on the list are seized, they are not to be released until “the scofflaw has settled his debt." Id.

7. This *ex parte self-help* collection scheme is being carried out as a joint operation by and between the Village of Freeport, Defendant Smith, and the Towing Defendants.

8. At the time of each warrantless seizure of a Scofflaw vehicle, Freeport Police call Defendant Non-Stop to physically tow each seized vehicle from the place of seizure, and to then store same, until the Freeport Police Department authorizes Non-Stop to either: (a) release it to its owner, (b) sell it and retain the proceeds from such sale as its compensation for having towed/stored it at Freeport's request, or (c) release it to a third party.

9. Freeport then sends letters to the owners of such seized vehicles wherein Freeport explicitly threatens each respective owner, as follows:

> *"You are hereby notified that the above-described motor vehicle has been impounded by the Freeport Police Department. . . . You are liable for the costs of storage and removal of the said vehicle. . .*
> *The Village of Freeport shall acquire title to this vehicle unless claimed within ten (10) days of the above date. In such event, the vehicle will be destroyed."*
>
> See Exhibit B, which is annexed to, and made part of, this complaint.

10. If the vehicle owner does not comply with the Village's unilateral demand to pay within 10 days, it makes good on its threat by issuing a "Vehicle Release Authorization" to Non-Stop, wherein the Village authorizes Non-Stop to "release" the vehicle *to itself*, so it can sell the vehicle, and retain the proceeds from the sale as its compensation for having towed and stored the vehicle at Freeport's request.

11. To prevent their vehicles from being sold by the Defendants, vehicle owners must succumb to the demands that they pay: (a) sums which Freeport claims it is owed for unadjudicated parking summonses, *plus* (b) a $117.00 "Impound Fee," *plus* (c) exorbitant fees for towing and storage services, payable to Non-Stop, from which Non-Stop pays Freeport the $300.00 *per-tow kickback*.

12. Annexed collectively as Exhibit "C" is a sampling of more than two hundred (200) Vehicle Release Authorizations wherein the Freeport Police Department seized all of such vehicles, without warrants, and thereafter authorized "Non-Stop Towing" to release those seized vehicles to "Non-Stop Towing" - - which then sold such vehicles, and retained the proceeds from such sales - - but paid a $300 kickback to Freeport in each case.

13. This practice was verified within sworn deposition testimony of Joseph Calvagno, the principal of All County Hook Up Towing Inc., taken on February 21, 2024, in the matter of Alberto Higgs v. Village of Freeport, U.S.D.C. E.D.N.Y. 23-cv-03943. Such testimony Plaintiff incorporates into his complaint by referencing the same herein.

14. At no time were the owners of such seized vehicles afforded any pre-seizure hearing or any proper post-seizure hearing at which to challenge:

(a) Freeport's initial warrantless seizure of their respective vehicles;

(b) Freeport's right to the continual retention of their vehicles as a means of extorting payment from the owner;

(c) Freeport's right to "release" each vehicle to Non-Stop in the event that a vehicle owner does not pay the sums demanded by Freeport;

(d) Freeport's right to authorize Non-Stop to sell each vehicle;

(e) Non-Stop's right to sell same, and to retain the proceeds of such sale; or

(f) Either of the defendants' rights to give the vehicle to a third party.

15. As a result of the Defendants having seized and sold or otherwise disposed of the Plaintiff's motor vehicle under this practice, the Plaintiff has commenced this action seeking redress pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

16. The Plaintiff brings this case as a Class Action, on behalf of both himself and all of the other vehicle owners whose vehicles were seized, without warrants, for allegedly unpaid and unadjudicated parking tickets, which were then sold by the Defendants - - within the past three years - - in precisely the same manner the Defendants did the same to the Plaintiff herein.

## II. JURISDICTION AND VENUE

17. Plaintiff brings this civil rights action pursuant to 42 U.S.C. §1983 and §1988 for deprivation of Plaintiffs' rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and the New York Constitution.

18. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court for all suits brought pursuant to 42 U.S.C. §1983, as well as 28 U.S.C. §1331, which provides for original jurisdiction in this Court for all causes of action arising under the Constitution and laws of the United States.

19. The supplemental jurisdiction of the District Court is invoked pursuant to 28 U.S.C. §1367 for an interrelated state law claim which has arisen from the occurrences giving rise to the Federal claims and which has a common nucleus of operative fact.

20. Plaintiff seeks declaratory relief, compensatory damages, and punitive damages, pursuant to 28 U.S.C. §§2201(a) and 2202 et al.

21. Plaintiff additionally seeks reasonable attorney's fees as part of the costs authorized to the prevailing party in an action pursuant to 42 U.S.C. §1983, predicated upon 42 U.S.C. §1988, and 42 U.S.C. §2000.

22. Venue lies in the Court pursuant to 28 U.S.C. §1391, because virtually all of the events described herein occurred in the Village of Freeport, in Nassau County, Long Island, within the Eastern District of New York.

## III. THE PARTIES

23. The Plaintiff, Nathaniel Paulino ("Mr. Paulino"), is an individual who resides in Freeport, New York.

24. The proposed Class Member Plaintiffs are vehicle owners whose vehicles were similarly deemed "Scofflaw" vehicles for having three or more alleged unpaid, albeit unadjudicated, parking tickets, which were then seized by Freeport, without warrants, and were sold or disposed of by the Defendants, within a period of three (3) years immediately preceding the filing of the instant Complaint.

25. This includes, but is not limited to, the approximately 200 vehicles described in the Vehicle Release Authorizations annexed hereto as Exhibit "C."

26. Defendant Michael Smith is the Chief of the Freeport Police Department with a principal place of business/employ at 40 N. Ocean Avenue, Freeport, New York 11520.

27. Upon information and belief, the Village of Freeport is a municipal corporation organized under the laws of the State of New York, with a principal place of business situated at 40 N. Ocean Avenue, Freeport, New York 11520.

28. Upon information and belief, Defendant Non-Stop Towing & Recovery ("Non-Stop") is an assumed name for JCB & Sons, Inc., which upon information and belief, is a domestic corporation organized and existing under the laws of the State of New York and operating as a business engaged in the towing and storage of motor vehicles, with a principal place of business located at 99 Maple Place, Freeport, New York 11520.

29. Upon information and belief, Defendant Jerome Bonomo is an individual residing at 23 Anchor Street, Apt. M, Freeport, New York 11520, and is the principal of Non-Stop. As such, Defendant Bonomo is responsible for setting Non-Stop's policies and practices.

## IV. FREEPORT'S WARRANTLESS SEIZURE AND SALE OF VEHICLES IT DEEMS "SCOFFLAWS" DUE TO UNPAID, ALBEIT UNADJUDICATED, PARKING TICKETS

30. The Village of Freeport has implemented and maintained a *non-judicial* self-help collection scheme, under the direction of the Village's Police Chief Defendant Michael Smith.

31. Under the policies, practices, and procedures being carried out under this scheme, Defendant Smith has directed all Freeport Police officers to make warrantless seizures of "Scofflaw" vehicles, which Freeport defines as any vehicle that has three or more outstanding, *albeit unadjudicated*, parking tickets. *See* Exhibit "A," that being an e-mail from Chief Smith to "All Sworn Personnel."

32. The Defendants carry out such warrantless seizures for the sole purpose of collecting monies, including: (a) monies which Freeport claims are owed for outstanding parking summonses; (b) a $117 "impound fee," and (c) a $300 *per-tow* kickback from the Towing Defendants.

33. Under this practice, the Defendants:

(i) deem vehicles to be "Scofflaw" vehicles if they have three or more outstanding, albeit unadjudicated, parking tickets, or the amount which Freeport alleges to be due for such tickets exceeds a predetermined amount;

(ii) prepare "Scofflaw" lists of such vehicles, which are sent to all sworn personnel within the Freeport Police Department, with an explicit directive to seize all vehicles on the list, wherever they may be found parked;

(iii) make warrantless seizures of such "scofflaw vehicles;"

(iv) retain continuing possession of same as a means of coercing their owners to pay the sums which Freeport claims it is owed, plus a $117.00 impound fee, plus excessive fees for towing and storage;

(v) send a 10-day letter, demanding that the vehicle owners pay all such sums within 10-days or their vehicle will be destroyed, and then

(vi) sell the vehicles if the sums are not paid within 10 days of Freeport having made demand for payment of same.

34. To implement such policies, practices, and procedures, Defendant Michael Smith affirmatively instructed all members of the Freeport Police Department to seize all "Scofflaw Vehicles," which he defined as all vehicles that had "3 or more outstanding parking summonses." *See* Exhibit "A."

(i) Initial Seizures of *Scofflaw Vehicles*

35. At all times described herein, Freeport has installed and operates a "ring of steel," comprised of fixed License Plate Readers (LPR's) which the Village has installed adjacent to roads and streets through which vehicles can enter or exit the Village.

36. This Ring of Steel scans the license plates of vehicles entering or exiting the Village and identifies, in real time, vehicles entering or exiting the Village of Freeport that have "3 or more outstanding parking summonses."

37. When one of its LPR's picks up the plate of a vehicle that has three or more outstanding parking summonses, the system electronically notifies Freeport patrol officers, in their patrol cars, in real time, that a specific Scofflaw vehicle has entered the Village.

38. As they have been directed by Defendant Smith, the patrol officers then wait for the vehicle to be parked and seize it without a warrant, any judicial order, or any exception to the warrant requirement.

39. Alternatively, if the amount that Freeport claims to be due for outstanding parking summonses reaches a predetermined amount, Freeport does not wait for its fixed LPRs to find the vehicle.

40. *Instead*, Freeport police officers will just go to the vehicle owner's home and seize their vehicle without a warrant or any exception to the warrant requirement, as was the case in Higgs v. Village of Freeport, which is currently pending in the U.S.D.C. E.D.N.Y. 23-cv-03943.

41. At no time prior to making such warrantless seizures of such vehicles does Freeport: (a) obtain or enter any judgments upon such outstanding parking summonses; (b) obtain a writ or writ of execution authorizing any Sheriff, police officer or anyone else to seize such vehicles to satisfy any such judgments; nor (c) obtain any judicial order, of any type, authorizing Freeport to seize such vehicles.

(ii) Continued Retention of Scofflaw Vehicles

42. When Freeport Police seize a Scofflaw vehicle, Freeport thereafter refuses to release such vehicle, and deprives the owners of their vehicles on a continuing basis, unless and until the owners then pay whatever amounts Freeport unilaterally demands they pay, and then additionally pay whatever sums the Towing Defendants demand.

43. Freeport demands such payments be made, under threat that if such sums are not paid within 10 days, Freeport will "destroy" (i.e., sell) their vehicles. *See* Exhibit "B."

44. In sum, Freeport simply seizes such vehicles without a warrant or any exception to the warrant requirement mandated under the United States Constitution, as a means of *non-judicial self-help* to force vehicle owners to pay sums that Freeport unilaterally claims are owed for non-adjudicated parking summonses.

(iv) Sham Retention Hearings for Scofflaw Seizures

45. Upon learning that other jurisdictions were being sued for making warrantless seizures of motor vehicles without affording the owners of such vehicles with hearings, in May of 2023, Freeport created a sham *post-seizur*e hearing process for scofflaw vehicles, which Freeport is seizing without warrants.

46. Freeport did so on or about May 2023 by enacting Section 1, Chapter 155, Article XIV §155-107 of the Freeport Village Code, a copy of which is annexed hereto as Exhibit D.

47. As is addressed hereinbelow, Section §155-107, is *per se* unconstitutional both as written, and as applied, and the post-seizure hearings and procedures which Freeport purports to offer the owners of seized vehicles violate virtually every clearly-established due process requirement and constraint articulated by the United States Court of Appeals for the Second Circuit, and the United States District Courts within the Circuit, over the past 25 years.

(iii) The Extortion Component of the Scheme

48. Once the Towing Defendants have seized a vehicle at Freeport's directive, they will charge vehicle owners as much as $1,000 to more than $3,500.00 dollars for "towing and storage" - - to ensure that they extract sufficient sums from each vehicle owner for them to pay Freeport its *kickback* of $300.00 per tow - - while still securing a handsome profit.

49. Annexed as Exhibits E, F and G are sample towing and storage bills from two of

Freeport's tow vendors (one of which is Defendant Non-Stop) that towed and stored seized vehicles at Freeport's direction. They charged, or sought to charge, the respective sums of $1,900.00, $1,069.96, and $3,568.33 to the respective vehicle owners before releasing the vehicles to them.

50. To extort such excessive sums from vehicle owners, Freeport threatens such vehicle owners that if they do not "reclaim their vehicle" (i.e., pay the sums unilaterally demanded) "within 10 days," "Freeport will acquire title" and will "destroy" their vehicle. *See* Exhibit "A."

51. If vehicle owners do not pay the sums demanded within 10 days, Freeport makes good on its threat by issuing a "Vehicle Release Authorization" authorizing the Towing Defendants to "release" each vehicle to itself, thereby concomitantly authorizing the Towing Defendants to sell the vehicles and to retain the proceeds from such sales.

52. At no time prior to issuing Vehicle Release Authorizations whereby Freeport authorizes Non-Stop to sell each seized vehicle, does Freeport obtain an order from any court empowering Freeport to "release" the owner's vehicle to Non-Stop, or empowering Freeport to authorize Non-Stop to sell the owners' vehicles.

53. At no time does Freeport or the other Defendants afford such vehicle owners with any hearing at which to challenge: (a) Freeport's right to "release" their vehicle to the Towing Defendants, or (b) Freeport's right to authorize the Towing Defendants to sell the vehicle and to retain the proceeds from such sale, nor (c) the Towing Defendants' right to sell such vehicles.

## V. FREEPORT'S UNCONSTITUTIONAL SCHEME IS APPLIED AGAINST PLAINTIFF NATHANIEL PAULINO

54. At all times described herein, Plaintiff Nathaniel Paulino was the owner of a 2019 Dodge Charger bearing Vehicle Identification (VIN) Number VIN 2C3CDXBG4KH725138 ("the Vehicle").

55. In August 2023, while the Plaintiff's Vehicle was lawfully parked on the street while he shopped at a store, the Defendants seized the Plaintiff's Vehicle without a warrant or any exception to the warrant requirement because the Defendants had deemed it to be a Scofflaw vehicle.

56. At the request of Freeport Police, the Towing Defendants took possession of the Plaintiff's vehicle, towed it to their place of business, and proceeded to withhold it from the Plaintiff, despite Plaintiff's demands, to the Towing Defendants, that they release it to him.

57. In an effort to secure its release, the Plaintiff paid approximately $2,000 to Freeport, which the Plaintiff did not owe to Freeport, and for which Freeport had not obtained any judgment in any Court, anywhere.

58. Despite the fact that he did not owe such sums, he was extorted by Freeport to pay such amount, because unless he did so, Freeport would not "authorize" the Towing Defendants to release the Plaintiff's vehicle.

59. Thereafter, the Plaintiff went to Non-Stop to demand the release of his vehicle, but Towing Defendants refused to release it, unless and until the Plaintiff paid them in excess of an additional three thousand ($3,000.00) dollars, for alleged towing and storage fees, for towing and storage services which the Plaintiff had never requested them to provide.

60. Since the Plaintiff was unable to assemble an additional $3,000 to pay the Towing Defendants after he had already paid Freeport $2,000, the Towing Defendants refused to release his vehicle to him, and, upon information and belief, sold the vehicle, thereby permanently depriving the Plaintiff of his vehicle.

## VI. EACH OF THE DEFENDANTS IS A "PERSON" WHO ACTED UNDER COLOR OF STATE LAW

### A. The Village of Freeport and Police Chief Michael Smith

61. While intentionally carrying out and directing this warrantless *seizure-for-profit and kickbacks scheme*, Freeport Police Chief/Defendant Michael Smith was a person acting under state law, exercising his power possessed by virtue of state law and made possible only because both he, and the Village of Freeport, were each clothed with the authority of state law. West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988), quoting (United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941).

62. The Village of Freeport is a person liable to the Plaintiff under 42 U.S.C. §1983 because the Defendants' actions were undertaken pursuant to customs, policies, and practices of the Village, and because in setting, carrying out, and affirmatively directing the enforcement of such policies, Defendant Michael Smith acted as the final decision-maker for the Village.

63. At all times described herein, Freeport was clothed with the authority to make official government policies and laws on its behalf, and the wrongful actions of the Defendants herein, with respect to the Vehicles described herein, represent Freeport's official governmental policies, practices, and procedures.

64. Defendant Michael Smith cannot avail himself of qualified immunity for his actions in directing all police officers and/or all sworn members of the Freeport Police Department, all of whom were acting under his control and supervision, to make warrantless seizures of vehicles based solely on the fact that the vehicles had three or more outstanding parking summonses, because no reasonable police chief or police officer could believe that seizing and selling cars without a warrant or judicial order didn't violate vehicle owners' clearly established U.S. Constitutional rights.

65. Defendant Smith could not have reasonably believed that the carrying out of his directives would not violate the Constitutional rights of vehicle owners under the 4th and 14th Amendments to the United States Constitution.

**B. <u>Defendants Non-Stop Towing and Jerome Bonomo</u>**

66. Defendants Non-Stop Towing and Bonomo are also persons acting under color of state law because there is a sufficiently close nexus between the Village of Freeport and the challenged actions of Non-Stop Towing and Bonomo, so that their actions may fairly be treated as those of Freeport.

67. The Towing Defendants towed the Plaintiff's vehicle and those of the Class Members, stored them, deprived the Plaintiffs and other owners of their vehicles on a continuing basis, extorted monies for such towing and storage despite the fact that the owners of such vehicles did not request any such services, and sold the vehicles under color of authority granted to them by the Freeport Police Department.

68. In carrying out these activities, both Non-Stop and Bonomo acted pursuant to the coercive police power of the Freeport Police Department, and were controlled by same.

69. Both Non-Stop and Bonomo were willful participants in these joint activities with the Freeport Police Department; their functions were entwined with Freeport's seizure and vehicle retention policies, and Non-Stop and Bonomo were delegated public functions by the Freeport Police Department in physically seizing, taking possession of, and disposing of the vehicles of the Plaintiff and those of the Plaintiff Class Members.

70. As the principal of Defendant Non-Stop, Defendant Bonomo set the policies, practices, and procedures of Defendant Non-Stop, personally signed the agreement with Freeport to have Non-Stop carry out the unconstitutional policies, practices, and procedures jointly with Freeport, and directed and/or caused Non-Stop and its employees to carry out such unconstitutional policies, practices, and procedures.

## VII. CLASS ALLEGATIONS

71. Plaintiff brings this action on behalf of himself and those similarly situated.

72. As detailed in this Complaint, Defendants regularly and routinely seize and attach liens to vehicles under Freeport's scofflaw seizure-for-profit and kickbacks program, which is unconstitutional.

73. The Defendants are carrying out this policy over the entire geographic area of the Village of Freeport, impacting hundreds of persons who were deprived of their seized vehicles with no notice, no due process, and no compensation.

74. Accordingly, this action is ideally situated for class-wide resolution, including injunction and/or declaratory relief.

75. The Class is defined as all persons with interests in vehicles that were seized by Freeport without a warrant, for unpaid, albeit unadjudicated, parking tickets, which were then

sold and/or disposed of by the defendants, under the procedure described herein above, within the period of three (3) years immediately preceding the date of the filing of the complaint herein.

76. The Class is properly brought and should be maintained as a class action under Federal Rule 23 (b), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

(a) Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff is aware that there are at least 200 cases where persons have been deprived of their rights by the implementation of Freeport's scofflaw seizure & kickback program, many of whose vehicles have been identified by the Plaintiff in the list annexed to and made part of this Complaint as Exhibit "C."

(b) Commonality: The questions of law and fact common to the Class Members which predominate over any questions that may affect individual Class Members include, but are not limited to: Whether Defendants are responsible for violations of constitutional rights via Freeport's scofflaw seizure kickback program; Whether Plaintiffs and the Class Plaintiffs are entitled to damages; Whether Plaintiffs and the Class Plaintiffs are entitled to money damages under the causes of action delineated below as to other Class Members.

(c) Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same injury when Defendants enforced their scofflaw seizure kickback program. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

(d) Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his 42

U.S.C. §1983 claims are common to all members of the Class, and he has a strong interest in vindicating their rights. He has retained counsel who is competent and experienced in Section §1983 claims arising from the deprivation of rights in seized vehicles and in class action litigation, and he intends to prosecute this action vigorously. Plaintiff has no interests that conflict with those of the Class. Plaintiff and his counsel will fairly and adequately protect the Class Members' interests. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' concerted action in enforcing Freeport's scofflaw seizure kickback program.

(e) Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(i) The joinder of numerous individual Class Members with thousands of claims is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(ii) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

(iii) When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Class and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(iv) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

(v) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. This class action will assure uniformity of decisions among Class Members;

(vi) The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitive litigation;

(vii) Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

(viii) It would be desirable to concentrate in this single venue the litigation of all Plaintiffs who were deprived of their rights by Freeport's scofflaw seizure kickback program.

77. Accordingly, this Class is properly brought and should be maintained as a class action under Fed. Rule Civ. Pro. 23 (b) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**COUNT ONE**

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**

**Deprivation of Property by Unreasonable Seizure**
**4th Amendment Violation**

**<u>On behalf of Plaintiff Nathaniel Paulino Individually</u>**

78. Plaintiff realleges and incorporates herein by reference the allegations set forth within paragraphs "1" through "77" herein above, with the same force and effect as if fully set forth at length herein.

79. Plaintiff, Nathaniel Paulino, asserts this Count on behalf of himself, for the Defendants having violated his U.S. Constitutional right against unreasonable seizures, as is afforded protection under the 4th Amendment to the United States Constitution.

80. At all times described herein, Plaintiff Nathaniel Paulino was, and remains, the owner of the 2019 Dodge Charger described herein above. At all times described herein, Plaintiff Paulino possessed protected property rights to: (a) own, (b) use, and (c) possess the Subject Vehicle.

81. On March 10, 2025, the Defendants seized The Subject Vehicle, towed it, detained it, and affixed *non-judicial de facto* liens upon it, without a warrant or any exception to the warrant requirement.

82. The sole reason for which the Defendants seized the Plaintiff's vehicle without a warrant was to extract monies from the Plaintiff for unadjudicated parking tickets, impound fees, storage fees, and a kickback to Freeport.

83. Defendants' unreasonable seizure of the Plaintiff's Vehicle extended to include the Towing Defendants' ex parte attachment of a de facto lien against the Plaintiff's Vehicle, which Defendants Freeport and Smith authorized.

84. By virtue of the facts set forth herein above, Defendants' seizure of the Subject Vehicle was therefore unreasonable in violation of the 4th Amendment to the United States Constitution.

85. Defendants' unreasonable seizure of the Subject Vehicle was carried out by the Defendants under color of state law and was accomplished in accordance with the Defendants' standard policies, practices, and customs under Freeport's scofflaw seizure-for-profit and kickbacks program.

86. Each of the named Defendants played an active role in such seizure, as;

(a) Freeport and its Police Chief, Defendant Michael Smith, had prepared the Scofflaw list and affirmatively directed all Freeport Police Officers to make warrantless seizures of all vehicles on that list;

(b) Defendant Non-Stop took possession of The Subject Vehicle, thereafter depriving the Plaintiff of it on a continuing basis, and attempted to extort payment from the Plaintiff for towing and storage services that were not provided at Plaintiff's request; and

(c) Defendant Non-Stop refused to release the Vehicle to the Plaintiff, who has demanded the release of same, and instead, Non-Stop sold the Plaintiff's Vehicle without Plaintiff's consent or authorization, nor any Court order or writ authorizing Non-Stop to sell same; and

(d) Non-Stop's actions were carried out under the supervision and direction of its principal, Defendant Jerome Bonomo.

87. As a result of such unreasonable seizure and sale of his vehicle, the Plaintiff was damaged by having been permanently deprived of the use, possession, and ownership of his vehicle.

88. Under the policies, practices, and procedures of the Defendants, at no time was the Plaintiff afforded any pre-seizure notice or hearing that his vehicle was going to be seized.

89. Under the polices, practices and procedures of the Defendants, at no time was the Plaintiff afforded any post-seizure notice or constitutionally sufficient hearing, at which the Plaintiff was afforded any opportunity to challenge (a) the initial warrantless seizure of his vehicle, (b) the Defendants' authority to deprive him of its use and possession on a continuing basis, (c) the Defendants' rights to extort monies from him as a condition precedent to the release of his vehicle, nor (d) the Defendants' rights to authorize the sale of his vehicle, and to sell his vehicle, without the Plaintiff's authorization or consent, nor any judicial order or writ of execution authorizing or directing any such sale.

90. The actions of the individual Defendants were particularly egregious because they seized the Subject Vehicle for the sole purpose of extorting monies from the Plaintiff in a manner that would have constituted a criminal offense if it weren't for the fact that the Defendants seized same under the pretext of Freeport's police authority, and the individual Defendants purported to act as agents of Freeport.

91. Under New York State law, the Village of Freeport is utterly void of legal authority to make warrantless seizures of motor vehicles for the purpose of collecting sums which Freeport may claim to be due to it for outstanding unadjudicated parking summonses.

92. The State of New York has codified a procedure through which a municipality may pursue possession of personal property to recover fines for tickets. The state has also vested a specific official with the legal authority to make a warrantless seizure of personal property to recover same.

93. Under such clearly-established New York statutory procedure, if a municipality wishes to pursue possession of personal property because it is owed monies for unpaid tickets:

(a) the municipality must first serve notice, by certified mail, upon a vehicle owner, explicitly notifying the vehicle owner that the municipality intends to enter a civil judgment upon the unpaid tickets pursuant to VTL §1806-a;

(b) the municipality must then enter a judgment in a civil Court pursuant to CPLR Rule 5016;

(c) the municipality must then secure a Writ of Execution for enforcement of the judgment against personal property pursuant to CPLR §5230(a);

(d) the Writ must then be delivered to a Sheriff, pursuant to CPLR §5230(b) and;

(e) the Sheriff must then execute the Writ by seizing the specific personal property identified in the Writ for the benefit of the Judgment Creditor to satisfy the outstanding Judgment.

94. Instead of following that lawful statutory procedure, which would have conformed with the constraints of the 4th Amendment, Defendant Freeport, and its Police Chief, Defendant Michael Smith, arbitrarily decided that they could simply direct all of their patrol officers to seize motor vehicles, without warrants or any exception to the warrant requirement, simply because the Village of Freeport claims that it is owed monies from the owners of such vehicles for outstanding parking summonses that have not yet been adjudicated.

95. Even worse, they decided that they could extract exorbitant monies for towing and storage sums, in amounts sufficient to enable them to require their towing vendors to tender to Freeport nearly one million ($1,000,000.00) dollars annually, *in kickbacks*, as part of a

seizures-for-profit extortion scheme.

96. By virtue of the foregoing, the Defendants have violated the Plaintiff's rights under the 4th Amendment by unreasonably seizing the Plaintiff's vehicle and selling or otherwise disposing of it, without a warrant or any recognized exception to the warrant requirement.

97. As a result of the foregoing, Plaintiff Nathaniel Paulino has sustained compensable damages, and is entitled to obtain redress pursuant to 42 U.S.C. §1983, and to an award for compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.

98. The Plaintiff is entitled to a monetary award for compensatory damages, and a money judgment for same, against all of the Defendants, jointly and severally.

99. The Plaintiff is entitled to a monetary award for punitive damages, and a money judgment for same, against the Defendants Non-Stop and Bonomo jointly and severally.

**COUNT TWO**

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**

**Deprivation of Due Process**
**5th and 14th Amendment Violations**

**<u>On behalf of Plaintiff Nathaniel Paulino Individually</u>**

100. Plaintiff realleges and incorporates herein by reference the allegations set forth within paragraphs "1" through "99" herein above, with the same force and effect as if fully set forth at length herein.

101. As detailed herein, the Defendants permanently deprived the Plaintiff of his vehicle without having afforded him due process, in violation of his rights under the 5th and 14th Amendments to the United States Constitution.

The Release of Plaintiff's Vehicle to the Towing
Defendants, and Their Sale of His Vehicle

102. Under the policies, practices, and procedures of the Defendants, at no time was the Plaintiff afforded any post-seizure notice or hearing at which the Plaintiff was afforded any opportunity to challenge:

(a) Defendants Freeport's and Smith's rights to authorize the release of the Plaintiff's vehicle to the Towing Defendants; and

(b) Defendants Freeport's and Smith's rights to authorize the Towing Defendants to sell Plaintiff's vehicle, and to retain the proceeds from such sale.

The Seizure and Post-Seizure Retention of Plaintiff's Vehicle

103. Under the Defendants' policies, practices, and procedures, at no time was the Plaintiff afforded any constitutionally sufficient hearing that provided the Plaintiff with an opportunity to challenge:

(a) the initial warrantless seizure of his vehicle;

(b) the Defendants' authority to deprive him of its use and possession on a continuing basis;

(c) the Defendants' rights to extort monies from him as a condition precedent to the release of his vehicle.

Freeport's Sham Hearing Process

104. Having been made aware of Krimstock v. Kelly, 306 F. 3d. 40 (2002) and its progeny, Defendant Freeport recently enacted local law, Freeport Village Code Section §155-107, as a pretext, through which Freeport affords sham hearings to persons whose vehicles it has seized as Scofflaw vehicles.

105. Both as written and as applied, Section §155-107 is unconstitutional for three (3) reasons set forth herein below, and it is actually being used as a mechanism to violate vehicle owners' rights to due process, rather than affording them due process.

A. Violation of the Unconstitutional Conditions Doctrine

106. First, Freeport Village Code Section §155-107, which permits owners of seized vehicles to request a post-seizure hearing, is unconstitutional on its face because it violates the Unconstitutional Conditions Doctrine.

107. Section §155-107 explicitly provides that when Freeport has seized a vehicle without a warrant for outstanding parking summonses, that vehicle is not permitted to be released to its owner, unless the owner first provides a General Release to Freeport, forever waiving their right to sue Freeport for having violated their constitutional rights by having seized their vehicle without a warrant.

108. This patently unconstitutional requirement is set forth within §155-107(G), which provides as follows:

> "G. Proof of Right of Titled Owner or Lienholder to retake possession.
> A vehicle will not be turned over to a titled owner . . . unless (they) provide satisfactory proof of the right of a titled owner to take possession of the vehicle in the form of an Affidavit of Right [] stating . . .
> (1) The reason(s) the titled owner [] has the current right to take possession of the vehicle . . .;
> (3) **An agreement to release the Village for its conduct in towing the vehicle**." [emphasis added]
> *See* Exhibit D - Freeport Village Code Section §155-107.

109. Under the Unconstitutional Condition Doctrine, a governmental entity cannot require one to waive a U.S. Constitutional right as a condition precedent to receive the benefit of another constitutionally-protected interest to which they are entitled.

110. Freeport's written procedure violates this doctrine, because it explicitly mandates that for vehicle owners to regain their U.S. Constitutionally-protected property right to use and possess their own vehicles, they must first waive *their other* constitutionally-protected right, to petition for the redress of grievances (under the 1st Amendment), to sue the Village of Freeport, for having violated their rights in having seized their vehicle without a warrant in the first instance.

111. This mandatory precondition, which requires vehicle owners to provide the Village of Freeport with a general release as a condition precedent to the release of their vehicle, is a *per se* and clearly established violation of the vehicle owner's right to due process. See Fasciana v. County of Suffolk, 996 F. Supp. 2d 174 (2014).

B. Automatic Waiver of Right to Post Seizure Hearings

112. Second, under Freeport's policies, practices, and procedures, Freeport only affords post-seizure hearings to vehicle owners *who affirmatively request them*, and Freeport deems their right to a hearing "*waived*" if they do not request such a hearing within 21 days of having received notice that such a hearing is available to them. *See* Exhibit H.

113. This violates the constraints of due process, under which Freeport is required to afford hearings to all vehicle owners, irrespective of whether they request them or not. *See* County of Nassau v. Canavan, 1 N.Y.3d 134 (2003).

C. Inherently Void Legal Standard for Warrantless Seizures

114. It is black-letter law that a local government cannot seize personal property and deprive its owner of the same without a warrant or a recognized exception to the warrant requirement.

115. Defendant Freeport has hired and/or appointed one, and only one, supposedly "neutral hearing officer" who presides over post-seizure hearings for seized scofflaw vehicles,

who finds that such warrantless seizures are "legally valid," if the unadjudicated parking tickets were "*validly issued*."

116. At Freeport's sham post-seizure hearings, the Village's hearing officer merely requires a Village attorney to argue that the unadjudicated parking tickets were *validly issued*. The hearing officer then holds not only *that the warrantless seizure was "legally valid*," but also that the Defendants herein can continue to retain possession of the seized vehicles unless and until the owner pays the amounts demanded by the Defendants herein, as a pre-condition to each vehicle's release. *See* Exhibit "I" annexed to, and made part of, this complaint.

117. By virtue of the foregoing, the Defendants have violated the Plaintiff's rights under the 5th and 14th Amendments by temporarily, and then permanently, depriving the Plaintiff of the Subject Vehicle and selling or otherwise disposing of it, while having deprived the Plaintiff of Due Process.

118. As a result of the foregoing, Plaintiff Nathaniel Paulino has sustained compensable damages, and is entitled to obtain redress pursuant to 42 U.S.C. §1983, and to an award for compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.

119. The Plaintiff is entitled to a monetary award for compensatory damages, and a money judgment for same, against all of the Defendants, jointly and severally.

## COUNT THREE

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**

**Deprivation of Property by Unreasonable Seizure**
**4th Amendment Violation**

**Deprivation of Due Process**
**5th and 14th Amendment Violations**

**On Behalf of All Class Members**

120. Plaintiff realleges and incorporates herein by reference the allegations set forth within paragraphs "1" through "119" herein above, with the same force and effect as if fully set forth at length herein.

121. As described herein, under the Defendants' Scofflaw vehicle seizure program:

(a) the Defendants have made warrantless seizures of approximately two hundred motor vehicles within the period of three (3) years immediately preceding the date of the filing of the complaint herein,

(b) after having made such warrantless seizures, Defendants Village of Freeport and Smith have issued or caused to be issued "Vehicle Release Authorizations" by which Freeport Defendants purport to authorize Defendant Non-Stop to release such seized vehicles to itself, thereby authorizing Non-Stop to sell such vehicles, and to retain the proceeds from the sales of such vehicles, as compensation for having towed and stored such vehicles at Freeport's request; and

(c) upon receiving such authorizations from the Freeport Defendants, Defendants Non-Stop and Bonomo proceeded to sell and/or otherwise dispose of such vehicles, and retained the proceeds from such sales, without the consent of, or permission from, the owners of such vehicles,

and without any Court order or writ of execution authorizing any such sales.

122. Upon information and belief, under the policies, practices, and procedures of the Defendants, at no time were the owners of such vehicles afforded any pre-seizure notice or hearing that their vehicles were going to be seized.

123. Under the policies, practices and procedures of the Defendants, at no time were the owners of such vehicles afforded any post-seizure notice or constitutionally sufficient hearing, at which they were afforded any opportunity to challenge (a) the initial warrantless seizure of their vehicles, (b) the Defendants' authority to deprive them of the use and possession of their vehicles on a continuing basis, (c) the Defendants' rights to extort monies from them as a condition precedent to the release of their vehicles, nor (d) the Defendants' rights to authorize the sale of their vehicles, and to sell their vehicles, without their authorization or consent, nor any judicial order or writ of execution authorizing or directing any such sales.

124. The actions of the individual Defendants were particularly egregious because they seized the vehicles for the sole purpose of extorting monies from their owners in a manner that would have constituted a criminal offense, if it weren't for the fact that the Defendants seized same under the pretext of Freeport's police authority, and the individual Defendants purported to act as agents of Freeport.

125. In view of the foregoing, Plaintiff Nathaniel Paulino brings this action on behalf of all owners of vehicles that were seized by these same Defendants under such scheme for the period of three (3) years immediately preceding the commencement of this action, those constituting the proposed "Class Members."

126. Upon information and belief, the total number of Class Members is approximately two hundred (200), and many of their vehicles are identified on the list annexed as Exhibit "C" to this complaint.

127. Each of the Class Member Plaintiffs has suffered damages as a result of these same Defendants making warrantless seizures of their respective vehicles, and then permanently depriving them of their vehicles by virtue of the Freeport Defendants having authorized the Towing Defendants to sell and/or dispose of their vehicles, after which the Towing Defendants proceeded to do so.

128. Each of the Class Members suffered the same unreasonable seizures and 4th Amendment violations at the hands of the same Defendants herein.

129. Each of the Class Members suffered the same deprivation of property while contemporaneously being deprived of due process, in violation of their rights under the 5th and 14th Amendments, at the hands of the same Defendants herein.

130. The Plaintiff and Plaintiff Class Members are therefore entitled to relief under 42 U.S.C. §1983.

131. Each of the Class Members suffered damages and is entitled to obtain redress under 42 U.S.C. §1983 et al, and to obtain compensatory damages, and a money judgment to compensate them for the loss of their vehicles, equal to the fair market value of their vehicles at the time of each respective seizure, plus interest at the legal rate of nine (9%) percent per annum, accruing from the date of each seizure, through the date of judgment herein.

132. As a result of the foregoing, the Plaintiff and Class Members are entitled to obtain a money judgment against Defendants, jointly and severally, for actual damages, consequential damages, punitive damages (against Defendants, Non-Stop and Bonomo), statutory damages,

fees, and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems just and proper.

**COUNT FOUR**

**New York State Law Claim**
**Conversion**
**Against Non-Stop Towing and Bonomo**

**On behalf of Plaintiff Nathaniel Paulino Individually**

133. Plaintiff realleges and incorporates herein by reference the allegations set forth within paragraphs "1" through "132" herein above, with the same force and effect as if fully set forth at length herein.

134. Defendants Non-Stop Towing and Bonomo exercised wrongful dominion and control over the Subject Vehicle by refusing to release it to the Plaintiff, selling it, and then retaining the proceeds of such sale.

135. Defendant Bonomo directly controlled Non-Stop's actions in converting the Subject Vehicle.

136. The Plaintiff has suffered damages for loss of possession, use, and enjoyment of his property, as well as other actual damages resulting from the Towing Defendants' conduct. The actions of Non-Stop and Bonomo in disposing of the Subject Vehicle required the Plaintiff to litigate this issue with the Village of Freeport, thereby entitling the Plaintiff to recover his attorneys' fees as consequential damages of the Towing Defendants' actions.

137. The Plaintiff is entitled to a monetary award for compensatory damages, and a money judgment for same, against all Defendants, Non-Stop and Bonomo, jointly and severally.

138. The Plaintiff is entitled to a monetary award for reasonable attorney's fees and costs and a money judgment for same, against all of the Defendants, jointly and severally.

**COUNT FIVE**

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**Violation of the Takings Clause**
**5th Amendment**

**On behalf of Plaintiff Nathaniel Paulino, Individually**

139. Plaintiff realleges and incorporates by reference the allegations set forth in the prior paragraphs herein.

140. The Defendants seized the Subject Vehicle, and thereafter deprived the Plaintiff of its use and possession on a continuing basis, for the purpose of extorting monies from the Plaintiff.

141. By doing so, the Defendants successfully extorted monies from the Plaintiff, under threat of selling the Subject Vehicle.

142. The Defendants then sold the Subject Vehicle and retained the proceeds from such sale.

143. Such extractions of monies by the Defendants constituted takings within the meaning of the 5th Amendment to the United States Constitution.

144. The Defendants extracted such monies from the Plaintiff for a public use.

145. Such takings were executed in bad faith, for pretextual reasons, as an abuse of power.

146. The Defendants were thus required to tender just compensation to the Plaintiff for such takings.

147. Having failed to tender compensation for such taking, the Defendants have violated the Plaintiff's rights under the 5th Amendment to the United States Constitution.

148. As a result of the foregoing, the Plaintiff is entitled to obtain redress pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and is entitled to recover compensatory damages, punitive damages, attorneys' fees, and costs against the Defendants

## COUNT SIX

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**Violation of the Takings Clause**
**5th Amendment**

**On behalf of Plaintiff Class Members**

149. Plaintiff realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

150. The Defendants seized the Plaintiff Class Members' vehicles, and thereafter deprived the Plaintiffs of their use and possession of their vehicles on a continuing basis, for the purpose of extorting monies from the Plaintiff Class Members.

151. In hundreds of cases, the Defendants physically took Plaintiff Class Members' vehicles, sold them, and shared the proceeds of such sales with Freeport.

152. Such actions constituted government takings within the meaning of the 5th Amendment to the United States Constitution.

153. In other cases, the Defendants successfully extorted monies from the Plaintiff Class Members under the threat of selling their vehicles.

154. Such extractions of monies by the Defendants also constituted takings within the meaning of the 5th Amendment to the United States Constitution.

155. The Defendants took the Plaintiff Class Members' vehicles and monies for a

public use, which was to derive the proceeds from the sales of such vehicles or from the monies extorted from their owners.

156. Such takings were executed in bad faith, for pretextual reasons, as an abuse of power.

157. The Defendants were thus required to tender just compensation to the Plaintiff Class Members for such takings.

158. Having failed to tender compensation for such taking, the Defendants have violated the Plaintiffs' rights under the 5th Amendment to the United States Constitution.

159. As a result of the foregoing, the Plaintiff Class Members are entitled to obtain redress pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and to recover compensatory damages, punitive damages, attorneys' fees, and costs against the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff requests that the Court render judgment and award the Plaintiff and Class Members the following relief:

### UNDER COUNT ONE

### UNREASONABLE SEIZURE - 4TH AMENDMENT
42 U.S.C. §§1983, 1988)

**On Behalf of Plaintiff Nathaniel Paulino**

1. For an award of compensatory damages and a monetary judgment against all of the named Defendants jointly and severally, in the amount of seventy-five thousand dollars ($75,000.00) or in such an amount proven at trial;

2. For an award of punitive damages and a monetary judgment against Jerome

Bonomo and JCB & Sons Inc, jointly and severally, in the amount of five million dollars ($5,000,000.00) or in such an amount proven at trial;

3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);
4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);
5. Together with such other and further relief as the Court may deem appropriate.

**UNDER COUNT TWO**

**DEPRIVATION OF DUE PROCESS - 14TH AMENDMENT**
42 U.S.C. §§1983, 1988)

**<u>On Behalf of Plaintiff Nathaniel Paulino</u>**

1. For an award of compensatory damages and a monetary judgment against all of the named Defendants jointly and severally, in the amount of seventy-five thousand dollars ($75,000.00) or in such an amount proven at trial;
2. For an award of punitive damages and a monetary judgment against Jerome Bonomo and JCB & Sons Inc, jointly and severally, in the amount of five million dollars ($5,000,000.00) or in such an amount proven at trial;
3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);
4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);
5. Together with such other and further relief as the Court may deem appropriate.

**UNDER COUNT THREE**

**UNREASONABLE SEIZURE - 4TH AMENDMENT**
**DEPRIVATION OF DUE PROCESS - 14TH AMENDMENT**
42 U.S.C. §§1983, 1988)

**On Behalf of The Plaintiff Class**

1. For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of fifteen million dollars ($15,000,000.00) or in such an amount proven at trial;

2. For an award of punitive damages and a monetary judgment against Jerome Bonomo and JCB & Sons Inc, jointly and severally, in the amount of five million dollars ($5,000,000.00) or in such an amount proven at trial;

3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5. Together with such other and further relief as the Court may deem appropriate.

**UNDER COUNT FOUR**
**State Law Claim**

**CONVERSION**

**On Behalf of Plaintiff Nathaniel Paulino**

1. For an award of compensatory damages and a monetary judgment against all of the named Defendants jointly and severally, in the amount of seventy-five thousand dollars ($75,000.00) or in such an amount proven at trial;

2. For an award of punitive damages and a monetary judgment against Jerome Bonomo and JCB & Sons Inc, jointly and severally, in the amount of one million dollars ($1,000,000.00) or in such an amount proven at trial;

3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5. Together with such other and further relief as the Court may deem appropriate.

**UNDER COUNT FIVE**

**TAKING CLAIM - 5TH AMENDMENT**
42 U.S.C. §§1983, 1988)

**On Behalf of Plaintiff Nathaniel Paulino**

1. For an award of compensatory damages and a monetary judgment against all of the named Defendants jointly and severally, in the amount of seventy-five thousand dollars ($75,000.00) or in such an amount proven at trial;

2. For an award of punitive damages and a monetary judgment against Jerome Bonomo and JCB & Sons Inc, jointly and severally, in the amount of one million dollars ($1,000,000.00) or in such an amount proven at trial;

3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5. Together with such other and further relief as the Court may deem appropriate.

**UNDER COUNT SIX**

**TAKING CLAIM - 5TH AMENDMENT**

42 U.S.C. §§1983, 1988)

**On Behalf of The Plaintiff Class**

1. For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of fifteen million dollars ($15,000,000.00) or in such an amount proven at trial;
2. For an award of punitive damages and a monetary judgment against Jerome Bonomo and JCB & Sons Inc, jointly and severally, in the amount of five million dollars ($5,000,000.00) or in such an amount proven at trial;
3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);
4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);
5. Together with such other and further relief as the Court may deem appropriate.

Dated: Merrick, New York
June 17, 2026

CAMPANELLI & ASSOCIATES, P.C.

By: /s/ Andrew J. Campanelli
*Attorneys for Plaintiffs*

Andrew J. Campanelli
1757 Merrick Ave, Suite 204
Merrick, NY 11566
516-746-1600
ajc@campanellipc.com